HCC 12/19/19

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 FEB -7 PM 4:16

CLERK'S OFFICE
AT BALTIMORE
BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Kathleen O. Gavin
Assistant United States Attorney
Kathleen.Gavin@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4887
MAIN: 410-209-4800
FAX: 410-962-3091

December 19, 2019

Brendan Hurson, Esquire
Assistant Federal Public Defender
100 S. Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

Re: *United States v. Varnum*
    Criminal No. RDB-19-0337

Dear Mr. Hurson:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Darryl Albert Varnum (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Monday, January 13, 2020, it will be deemed withdrawn. The terms of the Agreement are as follows:   21 (BAH)

1/6/ BAH DAV

### Offense of Conviction

1.  The Defendant agrees to ~~waive Indictment and~~ plead guilty to ~~a one~~ count TWO OF THE SUPERSEDING ~~Information to be filed against him,~~ charging the Defendant with making a threatening INDICTMENT communication in interstate commerce in violation of 18 U.S.C. §875(c). The Defendant admits BAH that the Defendant is, in fact, guilty of that offense and will so advise the Court.

DAV

### Elements of the Offense

2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:
                                SUPERSEDING INDICTMENT
    That on or about the time alleged in the ~~Information~~, in the District of Maryland, BAH

DAV

BAH DAV

1

   a. The Defendant threatened to kill or injure Congressperson #1, as alleged in the Superseding Indictment;

   b. The threat was transmitted in interstate commerce; and

   c. The Defendant transmitted the communication for the purpose of issuing a threat and with the knowledge that the communication would be viewed as a threat by the recipient.

Penalties

3. The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 875(c) | n/a | 5 years | 3 years | $250,000 | $100 |

   a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to

collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph

3

below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. This Office and the Defendant further agree that the applicable base offense level is twelve (12) pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2A6.1(a)(1).

    b. The offense level is reduced by four (4) levels, because the offense involved a single instance evidencing little or no deliberation. §2A6.1(b)(6).

    c. The adjusted offense level, prior to any reduction for acceptance of responsibility, therefore, is eight (8).

4

d.  This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.  There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.  Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9.  At the time of sentencing, this Office will recommend that the Defendant be sentenced to a period of three years of probation with the condition that the first six (6) months of that period be served in community confinement. The Defendant will be free to argue for any sentence that he deems appropriate. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of the Superseding Indictment.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.  The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty are unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

      i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

      ii. This Office reserves the right to appeal any sentence below a statutory minimum.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Defendant's Conduct Prior to Sentencing and Breach

  11. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

  12. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

13. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

14. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Kathleen O. Gavin
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1/21/2020
Date

Darryl Albert Varnum

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the

7

Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

1/21/2020
Date

Brendan Hurson, Esquire

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

On June 26, 2019, the defendant, Darryl Albert Varnum, knowingly and intentionally transmitted in interstate commerce a communication that he intended to be a threat in violation of 18 U.S.C. §875(c).

At approximately 7:23 p.m. on June 26, 2019, Varnum used his cell phone to place a call from his residence in Westminster, Maryland to the district office of United States Congressperson #1, which is located in the State of Florida. When no one answered at the district office, Varnum left a voicemail message, which consisted of the following:

> I'm gonna kill your ass if you do that bill. I swear. I will fucking come down and kill your fucking ass. And you're a Congressperson, that is fine. I hope the fucking FBI, CIA, and everybody else hears this shit. If you're taking away my rights. This is the United States of America, bitch. Get the fuck out. I will come down there and personally fucking kill you. I am dead fucking serious. I wanna see you motherfuckers at my door, if you're legit. That HR bill you just pushed through, ah fuck you. I'll tell you what I'll come down to Miami bitch. I'll fuck you up. Like Cubans don't even know.

About 12 minutes later, at 7:35 pm, Varnum posted on the timeline of his public Facebook account a photograph of an American flag and the words "H.R. 2527 Vaccinate All Children Act of 2019." The post also stated the following: "Holocaust has begun! I'm done with this bullshit. Time to step up or ship out!" Then at 8:10 pm, Varnum posted the following on his timeline: "All of our guns are next, been trying for years!"

Congressperson #1 is a public supporter of H.R. 2527.

1

Varnum transmitted the above threat to Congressperson #1 for the purposes of issuing a threat and with the knowledge that the communication would be viewed as a threat by the recipient.

SO STIPULATED:

Kathleen O. Gavin
Assistant United States Attorney

Darryl Ablert Varnum
Defendant

Brendan Hurson, Esquire
Counsel for Defendant

2